IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BRYAN MCELROY,<br><br>                       Plaintiff,<br><br>v.<br><br>AMERICAN FAMILY INSURANCE<br>COMPANY a.k.a. AMERICAN FAMILY<br>INSURANCE GROUP,<br><br>                       Defendant. | MEMORANDUM DECISION AND<br>ORDER GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY JUDGMENT<br><br><br><br>Case No. 2:12-CV-1132 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendant American Family Insurance's ("AFI")

Motion for Summary Judgment.[1]  For the reasons set forth below, the Court will grant

Defendant's Motion.

## I.  BACKGROUND

For purposes of summary judgment, Defendant does not dispute Plaintiff Bryan

McElroy's deposition testimony, which describes the facts of this case as follows.

Plaintiff was Defendant's employee from October 4, 1999, to October 28, 2011.  From

2004 onward, Plaintiff was employed in a position that required him to manage and motivate a

team of sales agents.

In or around 2006, Plaintiff and Tony Grilz ("Grilz") were colleagues attending an AFI

event in St. Kitts.  The two men had a confrontation during the trip over the use of a catamaran

rented by Plaintiff.

---

[1] Docket No. 16

1

In 2007, Grilz was promoted to state director and became Plaintiff's supervisor. Shortly thereafter, in January 2008, Grilz told Plaintiff, "You are not my first choice as manager," and "I'm going to do everything I can to remove you because I want someone younger and more moldable, someone that I can mold to what I want in a manager."[2]

Sometime in 2008, Grilz began to act in a way that made Plaintiff feel uncomfortable. Grilz frequently complimented Plaintiff's clothing, and would touch and admire Plaintiff's suits. On other occasions, Grilz would complain of back pain and touch Plaintiff's back and buttocks to show Plaintiff the location of Grilz's pain. In 2010 and 2011, Grilz instructed Plaintiff to participate in a body-fat contest that required Plaintiff to wear a speedo. During the 2010 contest, Grilz commented that Plaintiff looked good in a speedo and attempted to touch Plaintiff's buttocks. Finally, between April 4, 2011, and April 6, 2011, Grilz and Plaintiff attended a company event in Las Vegas, Nevada. During this trip, Grilz repeatedly asked Plaintiff to join him for drinks. All behavior that Plaintiff perceived to be sexually charged stopped on April 6, 2011, after Plaintiff bluntly declined Grilz's invitation to go out for drinks.

In January 2011, four agents on Plaintiff's team resigned to start their own brokerage firm, which created a roughly 40% drop in quota activity. Around this time, a fifth member of Plaintiff's team was transferred to another team. Consequently, Plaintiff and Grilz set goals for Plaintiff to recruit replacement agents and to meet certain performance goals. To select new agents, Plaintiff was responsible to bring in qualified recruits for an interview. But Grilz held the ultimate authority to decide whether to hire interviewed recruits.

---

[2] Docket No. 19-1, at 24.

In March 2011, Defendant sponsored a booth at the Home Expo Show, which was held on a Sunday. Grilz informed Plaintiff that he was obligated to work the event because Plaintiff was Catholic while the company's other local employees were Mormon and therefore unable to work on Sundays—but Plaintiff also testified that other employees also worked that Sunday. Plaintiff also claims that Grilz would mock the Mormon religion, but does not provide a time frame for this conduct.

Throughout the spring of 2011, Plaintiff and Grilz met and discussed the progress of Plaintiff's team's performance and Plaintiff's recruiting efforts.

On April 13, 2011, Plaintiff's team was assigned to staff a sales booth at a Utah Jazz game, but failed to attend.

On April 22, 2011, Plaintiff called Defendant's anonymous internal ethics hotline to report conduct by Grilz that was discriminatory and unbecoming of a manager. Specifically, Plaintiff asserted that Grilz required Plaintiff to work on a Sunday because the other employees were Mormon and Plaintiff was Catholic. Plaintiff also reported that Grilz had repeatedly told Plaintiff that Grilz preferred subordinates who were younger and more moldable than Plaintiff.

On May 24, 2011, Grilz called a meeting of the sales managers to discuss the availability of an agency sales manager who worked under the direction of Grilz and who was available to assist the sales managers in meeting their sales goals. During the meeting, Plaintiff repeatedly asked for clarification of the agency sales manager's job description and authority. A tense exchange occurred between Plaintiff and Grilz, ultimately resulting in Grilz becoming upset and briefly stopping the meeting. Plaintiff and Grilz left the meeting to have a private discussion,

wherein Grilz asked Plaintiff to be supportive. After Plaintiff agreed to support Grilz, the two men returned to the meeting.

On May 26, 2011, Grilz called Plaintiff into his office—where the regional vice president was on speakerphone—to explain that Plaintiff was being disciplined for insubordination. After Grilz and Plaintiff explained their differing views of the incident, the regional vice president said he would follow up on the issue and asked Plaintiff if he could work with Grilz. Plaintiff said that he could work with Grilz.

On July 29, 2011, Grilz and Plaintiff met again to discuss Plaintiff's progress in recruiting agents, and Plaintiff's team's performance, which were both falling short of the goals set earlier in the year. At this meeting, Grilz told Plaintiff, "Everything's kind of a wash with the agents that had left, we know that we have to pick up recruiting, but this year is a wash so we'll just let this year go and pick things up in January."[3]

On August 4, 2011, Grilz called another meeting with Plaintiff wherein Grilz presented Plaintiff with a document called a Performance Improvement Process that detailed Plaintiff's team's deficiencies, goals for improvements, and consequences for continued subpar performance. Plaintiff and Grilz met to discuss Plaintiff's continued failure to reach performance and recruiting goals on September 6, 2011, and October 14, 2011.

On October 28, 2011, Plaintiff was terminated from AFI and informed that he would not be eligible for any position with the company in the future. Grilz explained, "Bryan, I hate to do this to you, but I can't go on with you any longer."[4]

---

[3] *Id.* at 83.

[4] *Id.* at 100.

Plaintiff asserts that Grilz treats Plaintiff's replacement—Julie Larson ("Larson")—more favorably than Plaintiff was treated. Specifically, Plaintiff claims that despite Ms. Larson's subpar performance, she is able to claim mileage for her travel from her home in Park City to the office in Salt Lake City, and she does not participate in certain classes.

On January 30, 2012, Plaintiff completed an Intake Questionnaire with the Utah Antidiscrimination and Labor Division ("UALD"), asserting that he had been discriminated against based on his gender, age, and religion, and that his termination was retaliation for contacting the internal ethics hotline. On March 1, 2012, Plaintiff filed a Charge of Discrimination with UALD and the Equal Employment Opportunity Commission, reiterating the assertions of discrimination and retaliation originally detailed in his Intake Questionnaire. On December 13, 2012, Plaintiff filed suit in this Court, asserting claims under Title VII, the Age Discrimination in Employment Act ("ADEA"), and the Family Medical Leave Act ("FMLA"), and a breach of contract claim.

## II. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5] In considering whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[6] The Court is required to construe all facts and reasonable inferences in the light most favorable to the

---

[5] Fed R. Civ. P. 56(a).

[6] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

nonmoving party.[7] "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[8] "If the burden of persuasion at trial would be on the *non-moving* party, . . . the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim."[9] "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]."[10]

### III.  DISCUSSION

Defendant argues it is entitled to summary judgment on each of Plaintiff's claims because many of the claims are time barred, nearly all of them fail under the *McDonnell Douglas* burden-shifting framework, or they otherwise fail as a matter of law.  The Court will address each claim in turn.

### A.    GENDER DISCRIMINATION

Defendant argues that Plaintiff's gender-discrimination claim (1) is time barred and (2) fails under the *McDonnell Douglas* burden-shifting framework.

---

[7] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

[8] *Anderson*, 477 U.S. at 249.

[9] *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986).

[10] *Anderson*, 477 U.S. at 252.

*1.*     *Timeliness of Claim*

"It is well-established that Title VII requires a plaintiff to exhaust his or her administrative remedies before filing suit."[11]  "[E]ach discrete incident of [discriminatory] treatment constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted."[12]  "A plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC."[13]  "Thus, to exhaust administrative remedies, 'the charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim[, because] each discrete incident of alleged discrimination or retaliation constitutes its own unlawful employment practice for which administrative remedies must be exhausted."[14]

Plaintiff's gender-discrimination claim is based on Plaintiff's assertion that Grilz treats Plaintiff's female replacement more favorably than Plaintiff was treated.  In particular, Plaintiff asserts that Larson is able to claim mileage that Plaintiff did not claim, and that Larson has not participated in classes in which Plaintiff was required to participate.  Neither the Intake Questionnaire Plaintiff submitted to UALD, nor the Charge of Discrimination Plaintiff filed with UALD and EEOC addressed any of Plaintiff's assertions about Grilz's preferential treatment

---

[11] *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005).

[12] *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110–13 (2002)).

[13] *MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005).

[14] *Manning v. Blue Cross & Blue Shield of Kan. City*, 522 F. App'x 438, 440–01 (10th Cir. 2013) (quoting *Jones v. United Parcel Serv.*, 502 F.3d 1176, 1186 (10th Cir. 2007)).

afforded to Larson. The only references to gender-based treatment in those documents are Plaintiff's allegations concerning his sexual-harassment claim.

Based on the foregoing, the Court finds that Plaintiff failed to exhaust his administrative remedies relating to his gender-discrimination claim. Moreover, even if the Court were to find that the gender-discrimination claim is not time barred, the claim would still fail under the *McDonnell Douglas* burden-shifting framework.

   2.   McDonnell Douglas *Burden Shifting*

Where, as here, a plaintiff does not present direct evidence of intentional discrimination but instead relies on circumstantial evidence, courts apply the "*McDonnell Douglas* burden shifting framework originally devised in the Title VII context to evaluate whether [Plaintiff] has demonstrated Defendant['s] discriminatory intent circumstantially."[15] "Under the *McDonnell Douglas* scheme, in order to survive summary judgment on a circumstantial case, the plaintiff must first establish a prima facie case of discrimination."[16]

To make out a prima facie case of gender discrimination, Plaintiff must demonstrate that "(1) the victim belongs to a protected class; (2) the victim suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination."[17] "In a reverse gender discrimination case like this one, however, a plaintiff 'must, in lieu of showing that he belongs to a protected group, establish background

---

[15] *Reynolds v. Sch. Dist. No. 1, Denver Colo.*, 69 F.3d 1523, 1533 (10th Cir. 1995) (citations omitted).

[16] *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

[17] *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007).

circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority.'"[18] "Alternatively, a plaintiff may produce facts 'sufficient to support a reasonable inference that but for plaintiff's status the challenged decision would not have occurred.'"[19]

Plaintiff fails to establish background circumstances that support an inference that Defendant—or Grilz—discriminates against the majority, or that Plaintiff's gender played any role in the challenged decision. Plaintiff offers minimal, second-hand accounts of his replacement at AFI—who happens to be female—and offers them as a comparison to his own experience. Even considering the facts in the light most favorable to Plaintiff, the Court is unable to conclude that Plaintiff has presented evidence demonstrating that Defendant or Grilz discriminates against men or that Plaintiff would have been treated differently but for his gender. Plaintiff "has introduced not a whit of statistical or even anecdotal evidence that men suffered adverse treatment as a class in the workplace."[20]

Based on the foregoing, the Court finds that Plaintiff failed to demonstrate a prima facie case for reverse gender discrimination and therefore Defendant is entitled to summary judgment on Plaintiff's gender-discrimination claim.

---

[18] *Clark v. Cache Valley Elec. Co.*, No. 13-4119, 2014 WL 3685996, at *3 (10th Cir. July 25, 2014) (quoting *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1201 (10th Cir. 2006)).

[19] *Argo*, 452 F.3d at 1201 (quoting *Notari v. Denver Water Dep't*, 971 F.2d 585, 589 (10th Cir. 1992)).

[20] *Id.*

B.      RELIGIOUS DISCRIMINATION

At the outset, the Court notes that Plaintiff's memorandum in opposition to Defendant's Motion for Summary Judgment does not contain arguments in opposition to Defendant's Motion as to Plaintiff's religious-discrimination claim.  Plaintiff also does not dispute Defendant's statement of the material facts and legal standard governing this claim.  Plaintiff does, however, assert that Defendant's statement of material facts is incomplete.  Although Plaintiff appears to have effectively conceded this claim, the Court will nonetheless analyze the claim's sufficiency out of an abundance of caution.

Defendant argues that Plaintiff's religious-discrimination claim (1) is time barred, and (2) fails under the *McDonnell Douglas* burden-shifting framework.

*1.      Timeliness of Claim*

"In states in which a state agency has authority to investigate employment discrimination ('deferral states'), Title VII requires claimants to file a charge of discrimination within 300 days of the alleged unlawful employment practice.  Utah is a deferral state."[21]

"Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'"[22]  "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Each discrete discriminatory act starts a new clock for filing charges alleging that

_____

[21] *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1183 n.1 (10th Cir. 2003).

[22] *Morgan*, 536 U.S. at 113.

act."[23]  In order for a claim to be actionable, the charge of discrimination "must be filed within

the . . . 300-day time period after the discrete discriminatory act occurred."[24]

"[W]hat constitutes a charge has been expanded beyond the strict technical requirements

to include any filing that can be 'reasonably construed as a request for the agency to take

remedial action to protect the employee's rights.'"[25]  For purposes of summary judgment, the

Court will treat Plaintiff's Intake Questionnaire—from January 30, 2012—as such a charge.

Consequently, any incident on which a claim could be predicated must have occurred on or after

April 5, 2011.

"The existence of past acts and the employee's prior knowledge of their occurrence,

however, does not bar employees from filing charges about related discrete acts so long as the

acts are independently discriminatory and charges addressing those acts are themselves timely

filed.  Nor does the statute bar an employee from using the prior acts as background evidence in

support of a timely claim."[26]  "[A] discrimination claim does not accrue when the plaintiff feels

the full effects of the discrimination, but when the discrete act occurs."[27]  In other words, to be

timely, Plaintiff's religious-discrimination claim—and Plaintiff's age-discrimination and

---

[23] *Id.*

[24] *Id.*

[25] *Simmons v. Harman Mgmt. Corp.*, No. 2:06-CV-834 TS, 2008 WL 4862450, at *1 (D. Utah Nov. 7, 2008) (quoting *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 401 (2008)).

[26] *Id.*

[27] *Daniels v. United Parcel Serv.*, 701 F.3d 620, 634 (10th Cir. 2012) (citing *Davidson*, 337 F.3d at 1188; *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 559 (10th Cir. 1994)).

retaliation claims discussed below—must derive from independently discriminatory acts that occurred during the limitations period.

Plaintiff bases his religious-discrimination claim on (1) the March 2011 incident when Grilz required Plaintiff to work on a Sunday because Plaintiff is Catholic and Plaintiff's colleagues were Mormon, and (2) on Grilz's comments mocking the Mormon religion. The March 2011 incident is outside the limitations period. Furthermore, Plaintiff has not provided evidence that Grilz made any mocking comments about the Mormon religion within the limitations period—and even if such evidence exists, it is not clear how those comments support Plaintiff's argument that Grilz discriminated against him as a Catholic. Unlike the March 2011 incident and Grilz's comments about the Mormon religion, Plaintiff's termination did occur within the limitations period. But Plaintiff has not presented evidence that Plaintiff's termination is independently discriminatory, such that it could support a timely filed religious-discrimination claim. Rather, in Plaintiff's deposition testimony, he explained that his religious-discrimination claim is based on the March 2011 incident, and does not assert that his termination was motivated by religious discrimination.[28]

Based on the foregoing, the Court finds that Plaintiff's claim for religious discrimination is time barred. Moreover, even if the Court were to find that Plaintiff's termination constitutes an independently discriminatory act—such that Plaintiff's religious-discrimination claim is timely—the claim would still fail under the *McDonnell Douglas* burden-shifting framework.

---

[28] *See* Docket No. 19-1, at 119.

2.      McDonnell Douglas *Burden Shifting*

It is unclear whether Plaintiff asserts a religious-discrimination claim based on a failure to accommodate or an intentional-religious-discrimination claim.  Both approaches are analyzed under a modified-*McDonnell Douglas* framework.  And under either approach, Plaintiff's claim fails.

To state a prima facie case for a religious-accommodation claim, Plaintiff must show that (1) he had a bona fide religious belief that conflicts with an employment requirement, (2) he informed his employer of this belief, and (3) he suffered an adverse employment action based upon his religious belief.[29]

Plaintiff has failed to introduce evidence showing that he suffered an adverse employment action based upon his religious belief.  As discussed above, Plaintiff has not presented any evidence demonstrating that his termination was related in any way to Plaintiff's religious convictions.  In so far as Plaintiff seeks to rely on the March 2011 incident and Grilz's comments about Mormonism as circumstantial evidence, these facts do not indicate that Plaintiff was terminated because of his religious belief.  First, Grilz's comments about Mormonism are inapplicable to Plaintiff, who is Catholic.  Second, Plaintiff was asked to work a single Sunday, which he ultimately agreed to do.  A jury could not reasonably find that Grilz was motivated to terminate Plaintiff based on Plaintiff's willingness to work one Sunday despite his preference— for religious reasons—to not work on Sunday.

Based on the foregoing, the Court finds that Plaintiff has failed to demonstrate a material adverse employment action based upon his religious belief or to otherwise present more than a

---

[29] *See Thomas v. Nat'l Ass'n of Letter Carriers*, 225 F.3d 1149, 1156 (10th Cir. 2000).

mere scintilla of evidence in support of his claim for religious discrimination based on a failure to accommodate.

Alternatively, direct-religious-discrimination claims are also subject to a modified-*McDonnell Douglas* burden-shifting framework.[30] To state a prima facie case involving direct religious discrimination, Plaintiff must demonstrate that (1) he was subjected to an adverse employment action; (2) at the time of the adverse employment action, Plaintiff's job performance was satisfactory; and (3) there is some additional evidence to support the inference that the employment actions were taken because of a discriminatory motive.[31]

As discussed above, Plaintiff has failed to produce more than a scintilla of evidence demonstrating that he suffered a material adverse employment action, such that his direct-religious-discrimination claim could survive summary judgment. Moreover, Plaintiff argues that he was required to work on Sunday because he is Catholic, whereas his coworkers were Mormon. Yet Plaintiff also asserts that Grilz repeatedly made mocking comments about Mormons, thereby undermining Plaintiff's position that Grilz treated Plaintiff's Mormon coworkers more favorably than Plaintiff, due to some discriminatory motive against Catholics.

Even if the Court assumes Plaintiff met his burden to demonstrate a prima facie case, Plaintiff's religious-discrimination claim still fails. If the plaintiff establishes a prima facie case, "'the burden shifts to the defendant to articulate a facially nondiscriminatory reason for the challenged employment action.'"[32] Defendant is not required to "litigate the merits of the

---

[30] *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1037–38 (10th Cir. 1993).

[31] *See id.* at 1038.

[32] *Argo*, 452 F.3d at 1201 (internal citation omitted).

reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need to prove that the reasoning was applied in a nondiscriminatory fashion."[33] Defendant "need only 'explain its actions against the plaintiff in terms that are not facially prohibited by Title VII.'"[34]

If the defendant articulates a legitimate nondiscriminatory reason for the challenged action, the burden reverts to the plaintiff to prove that the proffered nondiscriminatory reason is pretextual, from which a jury may infer discriminatory intent.[35] "A plaintiff demonstrates pretext by showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence."[36] A plaintiff can do so by showing "'such weaknesses, implausibilities, inconsistencies, incoherence, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable trier of fact could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'"[37] "Mere conjecture that the employer's explanation is pretext is insufficient to defeat summary judgment."[38]

---

[33] *Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1224 (10th Cir. 2007) (quoting *EEOC v. Flasher Co.*, 986 F.2d 1312, 1316 (10th Cir. 1992)).

[34] *Id.* (quoting *Jones v. Denver Post Corp.*, 203 F.3d 748, 753 (10th Cir. 2000)).

[35] *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997).

[36] *Jencks v. Modern Woodmen of Am.*, 479 F.3d 1261, 1267 (10th Cir. 2007) (quoting *Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1218 (10th Cir. 2003)).

[37] *Hilti*, 108 F.3d at 1323 (quoting *Olson v. Gen. Electric Astrospace*, 101 F.3d 947, 951–52 (3d Cir. 1996)).

[38] *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (citing *Hilti*, 108 F.3d at 1323).

Plaintiff concedes, "[O]n an objective basis, it would appear as though American Family has articulated a legitimate, non-discriminatory reason for firing Mr. McElroy."[39]  As such, the burden shifts back to Plaintiff to demonstrate that the proffered reason was pretextual, from which discriminatory intent may be inferred.

Plaintiff argues that Defendant's proffered reason is pretextual because Grilz controlled aspects of Plaintiff's performance.  Specifically, Plaintiff argues that Defendant's rationale for Plaintiff's termination for deficient performance was pretextual because Grilz alone had the authority to appoint agents from the pool of candidates, and Grilz set Plaintiff's performance goals and the time frames for accomplishing those goals.

First, Plaintiff explains that his responsibilities included motivating the agents on his team to perform at certain levels.  Plaintiff does not dispute that during his final eleven months of employment at AFI, the agents on Plaintiff's team were performing below average.  It is also undisputed that Plaintiff was an at-will employee.[40]

Second, Plaintiff challenges his record of underperformance by arguing that his supervisor shared responsibility for the failure to recruit agents.  The undisputed facts indicate that Grilz rejected candidates at the interview stage.  But Plaintiff has not presented evidence that Grilz rejected the candidates to undermine Plaintiff, or that his decisions were unreasonable.

Third, Plaintiff argues that Defendant's rationale was pretextual in part because Grilz had authority to set Plaintiff's performance goals and the time frames within which the goals were to be accomplished.  Grilz and Plaintiff first met to discuss Plaintiff's performance goals in early

---

[39] Docket No. 19, at 50.

[40] Docket No. 19-1, at 143.

2011. One of the primary goals Grilz established was for Plaintiff to recruit enough agents to restore his team to pre-2011 levels. After failing to meet that goal for many months, Plaintiff was terminated at the end of October 2011. The Court finds that the goal was reasonable and Plaintiff was given ample time to accomplish the goal.

Based on the foregoing, the Court finds that Plaintiff has failed to demonstrate that Defendant's rationale was pretextual. Consequently, the Court will grant summary judgment to Defendant on Plaintiff's religious-discrimination claim, whether the claim is understood to be based on direct religious discrimination or a failure to accommodate.

C.      AGE DISCRIMINATION

Defendant argues that Plaintiff's age-discrimination claim (1) is time barred, and (2) fails under the *McDonnell Douglas* burden-shifting framework. Plaintiff argues that *McDonnell Douglas* does not apply because Plaintiff has presented direct evidence of age discrimination.

*1.      Timeliness of Claim*

Plaintiff's age-discrimination claim under the ADEA is subject to the same statute-of-limitations rules governing the Title VII claims discussed above.[41]

Plaintiff's age-discrimination claim is based on Grilz's comment, in January 2008, that Plaintiff was not Grilz's first choice as manager and that Grilz wanted to replace Plaintiff with someone younger and more moldable. This incident is not within the limitations period and therefore cannot form the basis of Plaintiff's claim. Plaintiff has not otherwise presented evidence demonstrating the existence of a discrete discriminatory act that supports his age-discrimination claim that occurred within the limitations period.

_____

[41] *See Jones v. Runyon*, 32 F.3d 1454, 1458 (10th Cir. 1994).

As such, the Court finds that Plaintiff's age-discrimination claim is time barred. Even if the Court were to find that the age-discrimination claim is not time barred, Plaintiff's claim would nonetheless fail, as discussed below.

### 2. *Direct Evidence*

Plaintiff argues that he has presented direct evidence of age discrimination, thereby making the *McDonnell Douglas*'s burden-shifting framework inapplicable.[42]

"'Direct evidence is evidence, which if believed, proves the existence of a fact in issue without inference or presumption.'"[43] Direct evidence includes "oral or written statements on the part of a defendant showing discriminatory motivation."[44] "A statement that can plausibly be interpreted two different ways—one discriminatory and the other benign—does not directly reflect illegal animus, and, thus, does not constitute direct evidence."[45]

According to Plaintiff's deposition testimony, Grilz told Plaintiff, "I'm going to do everything I can to remove you because I want someone younger and more moldable, someone that I can mold to what I want in a manager."[46] This statement has two plausible interpretations. First, and perhaps more obviously, it could be interpreted to mean that Grilz intended to remove Plaintiff due to Plaintiff's age. Second, Grilz's comment could also be plausibly interpreted to

---

[42] *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985).

[43] *Hall v. U.S. Dep't of Labor, Admin. Review Bd.*, 476 F.3d 847, 854 (10th Cir. 2007) (quoting *Shorter v. ICG Holdings, Inc.*, 188 F.3d 1204, 1207 (10th Cir. 1999)).

[44] *Id.* (quoting *Kendrick v. Penske Transp. Servs. Inc.*, 220 F.3d 1220, 1225 (10th Cir. 2000)).

[45] *Id.* (quoting *Patten v. Wal-Mart Stores East, Inc.*, 300 F.3d 21, 25 (1st Cir. 2002)).

[46] Docket No. 19-1, at 24.

mean that Grilz hoped to remove Plaintiff because Plaintiff was an established manager in the

company who had a managerial style inconsistent with Grilz's vision for how Grilz planned to

approach his new position as state director. Because Grilz's comment has two plausible

interpretations—one discriminatory and the other benign—it does not constitute direct evidence.

Consequently, the comment is circumstantial evidence and the *McDonnell Douglas* burden-

shifting framework applies.

    *3.*    McDonnell Douglas *Burden Shifting*

        To demonstrate a prima facie case of age discriminate, Plaintiff must show that he was

"(1) within the protected class of individuals 40 or older; (2) performing satisfactory work; (3)

terminated from employment; and (4) replaced by a younger person, although not necessarily

one less than 40 years of age."[47]

        Plaintiff's deposition testimony satisfies the first, third, and fourth prima-facie elements.

As for the second element, however, for substantially the same reasons discussed above

concerning Plaintiff's failure to demonstrate that Defendant's rationale for terminating Plaintiff

was pretextual, the Court finds that Plaintiff has failed to introduce evidence that would permit a

reasonable jury to conclude that Plaintiff was performing satisfactory work.

        As discussed above, even if the Court assumed that Plaintiff demonstrated a prima facie

case of age discrimination, the Court finds that Plaintiff has failed to demonstrate that

Defendant's legitimate nondiscriminatory reason for terminating Plaintiff is pretextual. Based on

---

[47] *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1146 (10th Cir. 2008) (citing *Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 557–60 (10th Cir. 1996)).

the foregoing, the Court will grant summary judgment in Defendant's favor on Plaintiff's age-discrimination claim.

D.     HOSTILE WORK ENVIRONMENT BASED ON SEXUAL HARASSMENT

Defendant argues that Plaintiff's hostile-work-environment claim based on sexual harassment (1) is time barred, and (2) fails under the *McDonnell Douglas* burden-shifting framework.

1.     *Timeliness of Claim*

"[W]hen analyzing a hostile work environment claim spanning longer than 300 days '[a] court's task is to determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period.'"[48]  "[T]here must be a relationship between acts alleged after the beginning of the [limitations] period and the acts alleged before the filing period . . . ."[49]  "[A] series of alleged events comprises the same hostile environment where 'the pre- and post-limitations period incidents involve[d] the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers.'"[50]

In support of his claim for hostile work environment based on sexual harassment, Plaintiff alleges a pattern of unwanted touching and sexually charged conduct beginning in 2008, and extending to April 5–6, 2011.  "Hostile work environment claims are different in kind from

---

[48] *Duncan v. Manager, Dep't of Safety*, 397 F.3d 1300, 1308 (10th Cir. 2005) (quoting Morgan, 536 U.S. at 120) (second alteration in original).

[49] *Id.*

[50] *Id.* at 1309 (quoting *Morgan*, 536 U.S. at 120) (second alteration in original).

discrete acts" because such claims depend upon a series of acts that combine to create an abusive working condition.[51]  As such, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability."[52]  Plaintiff alleges that Grilz's sexual harassment continued until April 5–6, 2011, when Grilz repeatedly asked Plaintiff to go out for drinks.  This act contributes to Plaintiff's claim for hostile work environment based on sexual harassment. Therefore, the Court finds that this claim is not time barred.

    2.    *Prima Facie Case*

In evaluating a hostile work environment claim, the Court considers the work atmosphere both objectively and subjectively[53] while keeping in mind that Title VII is not "a general civility code for the American workplace."[54]  To that end, "run-of-the-mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces is not the stuff of a Title VII hostile work environment claim."[55]  The United States Supreme Court "[h]as made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment."[56] These standards are "sufficiently demanding" to ensure that they "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-

---

[51] *Morgan*, 536 U.S. at 115.

[52] *Id.* at 117.

[53] *Penry v. Fed. Home Loan Bank of Topeka*, 155 F.3d 1257, 1261 (10th Cir. 1998).

[54] *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998).

[55] *Morris v. City of Colo. Springs*, 666 F.3d 654, 664 (10th Cir. 2012).

[56] *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (citation and internal quotation marks omitted).

related jokes, and occasional teasing."[57] "'Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview.'"[58]

The harassment's severity and pervasiveness are "evaluated according to the totality of the circumstances, considering such factors as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[59]

Plaintiff argues that his workplace was made objectively hostile or abusive by Grilz frequently complimenting and touching Plaintiff's clothing, touching Plaintiff's back and buttocks purportedly to illustrate where Grilz was suffering pain, pressuring Plaintiff to participate in a body-fat contest, and persistently requesting for Plaintiff to join Grilz for drinks while on a business trip. Plaintiff's deposition testimony indicates that he was made to feel uncomfortable by Grilz, satisfying the subjective component of Plaintiff's burden. Nonetheless, although some of Grilz's conduct could make many people uncomfortable, it does not rise to the level of being so objectively offensive that it created a hostile or abusive work environment.

Based on the foregoing, the Court finds that Grilz's conduct is not so extreme that it amounts to a change in the terms and conditions of Plaintiff's employment, and therefore fails to state a claim for hostile work environment.

---

[57] *Id.*

[58] *Oncale*, 523 U.S. at 81.

[59] *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005) (citations and internal quotation marks omitted).

F.     RETALIATION; TITLE VII & ADEA

Plaintiff asserts that he engaged in a protected activity when he contacted the internal

ethics hotline, and argues that he was terminated in retaliation for engaging in this protected

activity.  Defendant contends that Plaintiff failed to demonstrate a causal connection between his

protected activity and his termination, as required by the *McDonnell Douglas* burden-shifting

framework.

In order to establish a prima facie case of retaliation, Plaintiff must show that: "'(1)

[Plaintiff] engaged in protected opposition to discrimination; (2) [Plaintiff] suffered an adverse

employment action; and (3) there is a causal connection between the protected activity and the

adverse employment action.'"[60]

"The causal-connection element of a prima facie retaliation claim requires the employee

to show that the employer's motive for taking adverse action was its desire to retaliate for the

protected activity."[61]  "A retaliatory motive may be inferred when an adverse action closely

follows protected activity.  However, unless the termination is *very closely* connected in time to

the protected activity, the plaintiff must rely on additional evidence beyond temporal proximity

to establish causation."[62]  The Tenth Circuit has found that when the time between the protected

---

[60] *Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002) (quoting *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1252 (10th Cir. 2001)).

[61] *Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1218 (10th Cir. 2003).

[62] *Piercy v. Maketa*, 480 F.3d 1192, 1198 (10th Cir. 2007) (quoting *Anderson*, 181 F.3d at 1179).

activity and the adverse employment action was three months, the plaintiff could not establish causation without additional evidence.[63]

Plaintiff has failed to demonstrate a causal connection between his protected activity and termination.  First, the two events occurred six months apart.  Second, Plaintiff was ultimately terminated for poor performance and his performance issues were first discussed months prior to his protected activity.  Third, after Plaintiff contacted the internal ethics hotline but before he was terminated, Grilz and Plaintiff had a verbal confrontation during a work meeting, which resulted in Plaintiff being reprimanded for insubordination.

Based on the foregoing, the Court finds that Plaintiff failed to demonstrate a causal connection between his protected activity and termination and therefore the Court will grant summary judgment to Defendant on Plaintiff's retaliation claim.

G.      BREACH OF CONTRACT

Plaintiff argues that Grilz "created a contractual-like obligation" when he told Plaintiff that Plaintiff would be given time to improve his performance.

"Utah is an at-will employment state."[64]  "This means that unless modified by contract all employment contracts are at-will."[65]  Plaintiff argues that an enforceable obligation was created when he reasonably relied upon Grilz's assurances.  Plaintiff's claim is without merit.  Plaintiff

---

[63] *See id.* at 1198–99; *Hysten v. Burlington N. & Santa Fe Ry.*, 296 F.3d 1177, 1183–84 (10th Cir. 2002); *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir.1997).

[64] *Uintah Basin Med. Ctr. v. Hardy*, 54 P.3d 1165, 1170 (Utah 2002).

[65] *Ostler v. Salt Lake City Corp.*, No. 2:04-CV-627 TS, 2005 WL 2237631, at *4 (D. Utah Sept. 14, 2005).

has not presented any evidence that Grilz's verbal assurances modified the terms of Plaintiff's at-will employment or created new employment obligations.

Based on the foregoing, the Court finds that Plaintiff has failed to present sufficient evidence, such that a jury could not reasonably return a verdict in Plaintiff's favor on this claim.

H.      INTERFERENCE & RETALIATION; FMLA

Plaintiff does not oppose Defendant's arguments for summary judgment on Plaintiff's FMLA claims.  Therefore, the Court will grant summary judgment for Defendant on these claims.

## IV.  CONCLUSION

It is hereby

ORDERED that Defendant's Motion for Summary Judgment (Docket No. 16) is GRANTED.

The Clerk of the Court is directed to enter judgment in favor of Defendant and against Plaintiff and close this case forthwith.

DATED this 30th day of September, 2014.

BY THE COURT:

_____
Ted Stewart
United States District Judge